DORI LUSINSKI, Plaintiff-Appellant, v. DOMINICK'S FINER FOODS, INC., *et al.,* Defendants-Appellees.

First District (1st Division)   No. 84—1588

Opinion filed September 9, 1985.

Larry D. Drury, Ltd., of Chicago, for appellant.

Kirkland & Ellis, of Chicago (Sidney N. Herman and Jonathan B. Newcomb, of counsel), for appellee Dominick's Finer Foods, Inc.

Martin, Craig, Chester & Sonnenschein, of Chicago (Charles G. Chester, Thomas H. Donohoe, and Nicholas J. Nedeau, of counsel), for appellee Jewel Companies, Inc.

JUSTICE CAMPBELL delivered the opinion of the court:
This appeal arises from the third amended complaint filed by plaintiff, Dori Lusinski, on behalf of herself and all other persons similarly situated, against defendants, Dominick's Finer Foods, Inc. (Dominick's), Jewel Companies, Inc. (Jewel), and all other entities similarly situated, seeking a refund of Illinois Use Tax paid by the plain-

tiff class to defendants on the stated value of nonreimbursable discount coupons[1] prior to September 30, 1980. The trial court dismissed plaintiff's third amended complaint for failure to state a cause of action. Plaintiff appeals.

In order to understand the narrow focus of this appeal, a brief explanation is necessary regarding: (1) the relationship between the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*) and the Illinois Use Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 439.1 *et seq.*); (2) the applicability of the aforementioned taxes to both reimbursable and nonreimbursable discount coupons; and (3) the pleadings which led to plaintiff's third amended complaint.

The Retailers' Occupation Tax Act imposes a tax (R.O.T.) on the occupation of selling tangible personal property for use or consumption in Illinois and falls on those persons engaged in such an occupation, *i.e.*, retailers. The tax is computed as a specified percentage of the retailer's gross receipts and is remitted to the Illinois Department of Revenue (the Department) (Ill. Rev. Stat. 1981, ch. 120, pars. 441, 442). The Use Tax Act imposes a tax on consumers for the privilege of using goods in Illinois and is measured by the selling price of the item used. The Use Tax is computed at the same rate as the R.O.T. To facilitate collection of the Use Tax, the Use Tax Act requires Illinois retailers to collect the tax from their customers who are the purchasing users of the property. It is important to note that the retailer need not remit the Use Tax collected on the transaction so long as he remits a corresponding amount of R.O.T. to the Department. Ill. Rev. Stat. 1981, ch. 120, par. 439.9.

Payment of the R.O.T. and collection of the Use Tax with respect to discount coupons is governed by Department Rule No. 46 (Rule 46). As amended in 1971, Rule 46 imposed R.O.T. on all discount coupon transactions, whether the coupons were reimbursable or nonreimbursable. As a result, retailers charged a corresponding Use Tax on the stated value of all discount coupons. In 1980, the Illinois Supreme Court voided Rule 46 as it applied to nonreimbursable coupons with its decision in *Saxon-Western Corp. v. Mahin* (1980), 81 Ill. 2d 559, 411 N.E.2d 242. *Saxon-Western* held that the stated value of nonreim-

---

[1] A nonreimbursable coupon or "store coupon" is issued by the retailer itself and entitles the purchaser to purchase the product identified on the coupon at a discount price. The retailer does not obtain reimbursement from any other source for the difference between the regular price and the discount price. By comparison, a reimbursable coupon or "manufacturers coupon" is issued by the manufacturer of item identified. The manufacturer then reimburses the retailer for the difference between the regular price and the discount price.

bursable coupons was not to be included in the gross receipts on which the R.O.T. was levied. The supreme court reasoned that because the retailer was not reimbursed for the value of the coupons, that amount could not properly be included in the retailer's gross receipts. Accordingly, the corresponding use tax was no longer applicable to nonreimbursable coupon transactions. In response to the *Saxon-Western* decision, the Department revised Rule 46 to eliminate R.O.T. liability on the stated value of nonreimbursable coupons.

. In the case at bar, on July 30, 1982, plaintiff filed suit against four retail chain stores: Dominick's, Jewel, Walgreen Company and Eagle Stores, Inc., citing the pre-*Saxon-Western* version of Rule 46 and seeking to enjoin defendants from imposing on their customers an illegal R.O.T. on the stated value of discount coupons. Defendants moved to dismiss on the grounds that *Saxon-Western* had overturned the version of Rule 46 relied upon by plaintiff and also that plaintiff had incorrectly stated the applicability of the R.O.T. Before the court could rule on defendants' motions, plaintiff filed a first amended complaint which corrected the confusion regarding the R.O.T. and cited the revised version of Rule 46. Upon the trial court's dismissal of plaintiff's first amended complaint, she filed a second amended complaint which distinguished between reimbursable and nonreimbursable coupons. Specifically, count I asserted that during 1982, and 10 years prior thereto, defendant retailers improperly collected Use Tax on nonreimbursable coupons. Count II asserted the same claim with respect to reimbursable coupons. Count III sought relief against the Director of the Illinois Department of Revenue and the Illinois Treasurer.

Following hearings on defendants' motions to strike and dismiss, the court entered an order, dated January 5, 1984, dismissing all counts with prejudice as to defendants Eagle Stores, Inc., Walgreen Company, the Illinois Treasurer and the Director of the Illinois Department of Revenue. With respect to the remaining defendants, Dominick's and Jewel, the court dismissed count II with prejudice and held as follows with respect to count I:

> "[T]he court finds, as a matter of fact, that [Dominick's and Jewel] have not collected use tax on transactions involving nonreimbursable coupons subsequent to September 30, 1980. The *Second Amended Complaint* is, therefore, dismissed with prejudice as to any allegations involving transactions occurring after September 30, 1980. *** The court finds that Jewel and Dominick's have paid to the state of Illinois an amount of Retailers' Occupation Taxes corresponding to the amount of Use

Taxes collected in non-reimbursable coupon transactions, and that *Hagerty v. General Motors* [citation] and *Adams v. Jewel Companies, Inc.*, [citation], require dismissal of Count I as to Jewel and Dominick's for liability prior to September 30, 1980. Plaintiff is given 28 days to file a third amended complaint alleging facts occurring prior to September 30, 1980 sufficient to state a cause of action under *Getto v. City of Chicago* [citation]. The allegation in Count I that Ill. Rev. Stat. 1981 ch. 120 sec. 439.9 is unconstitutional is stricken with prejudice."

Thereafter, plaintiff filed a third amended complaint which substantially reiterated count I of the second amended complaint. In an order entered May 4, 1984, the trial court granted defendants' motions to strike and dismiss the third amended complaint, finding that plaintiff had failed to state a cause of action under *Getto*.

The sole issue on appeal is whether the third amended complaint stated sufficient facts to come within the exception to the voluntary payment doctrine as set forth in *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844.[2]

■ The voluntary payment doctrine states that a retailer who collected Use Tax which was later held to have been erroneously imposed was not subject to a suit for refund from its customers if the customers paid the tax voluntarily and if the retailer had remitted the tax to the State in the form of R.O.T. (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 348, N.E.2d 161; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5.) In the case at bar, it is undisputed that both Dominick's and Jewel at all times prior to September 30, 1980, remitted to the State of Illinois R.O.T. in an amount corresponding to the amount of Use Tax collected in nonreimbursable coupon transactions. Thus, pursuant to *Adams* and *Hagerty*, in order for plaintiff to have grounds to file suit against defendants for a refund of the Use Tax paid, she must establish that she did not pay the Use Tax voluntarily. The procedure for establishing involuntary payment of taxes to the State is set forth in "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of

---

[2]On appeal, plaintiff attempts to raise the following additional issues: the statutory authority for taxing discount coupons; the statutory right to a refund of illegal use tax; the unjust enrichment of the retailers; and the applicability of the R.O.T. and the Use Tax to the stated value of discount coupons. Because none of the aforementioned issues were ruled upon in the order dated May 4, 1984, the only order from which plaintiff appeals, they are not properly before this court and cannot be considered on appeal. Ill. Rev. Stat. 1985, ch. 110A, par. 303(c)(2); *In re Custody of Roberts* (1982), 107 Ill. App. 3d 913, 919, 438 N.E.2d 658.

Illinois ***" (Protest Fund Act). (Ill. Rev. Stat. 1981, ch. 127, par. 170 *et seq.*) Pursuant to the Protest Fund Act, a consumer who wishes to contest a collection of the Use Tax can do so by paying the Use Tax under protest and then suing the retailer, Director of the Department of Revenue, and the Illinois Treasurer to require that the corresponding R.O.T. be paid under protest into a protest fund. (See *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill. 2d 521, 185 N.E.2d 139.) Because plaintiff failed to follow the procedure outlined in the Protest Fund Act, the only grounds on which she can state a cause of action for a tax refund is to show that the exception to the voluntary payment doctrine recognized by the Illinois Supreme Court in *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844, is applicable to her fact situation. In order to state a cause of action under *Getto*, plaintiff must present sufficient facts to show that payment of the Use Tax was made: (1) without knowledge of facts sufficient to form a basis for protest, or (2) under duress. We concur with the trial court's decision that plaintiff failed to set forth sufficient facts in her third amended complaint to establish either of the aforementioned criteria.

With respect to the first criterion, plaintiff attempted to demonstrate her lack of knowledge of sufficient facts by attaching cash register receipts as exhibits to the third amended complaint, and alleging:

> "The defendants' receipts, Exhibits A and B, do not indicate, and in fact fail to disclose, the improper computation of Illinois Use Tax upon discount coupons to wit: the *nature* and *rate* of the tax assessed is not stated; nor is it indicated whether the tax is upon the value of the item purchased, or the value of the discount coupons."

■ We find that plaintiff's argument fails for two reasons. First, the receipts are dated subsequent to September 30, 1980, and thus, are irrelevant to the issue at bar. Second, even if the receipts had been from the appropriate time period, they do not support plaintiff's argument that she did not have sufficient facts on which to base a protest. The receipts indicated the value of items purchased, the value of coupons redeemed, and the amount of tax charged. Contrary to plaintiff's allegation, she was not challenging the method of computation of the Use Tax. Rather, she was challenging the imposition of the Use Tax. In our opinion, the receipts constituted sufficient information for plaintiff to protest imposition of the tax. See *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 10.

We also disagree with plaintiff's argument that she paid the tax

under duress. Plaintiff alleges that she would not have been able to purchase particular items at lower prices without use of the discount coupons and payment of the Use Tax on the full price. As stated by this court in *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 151, 452 N.E. 10:

"For a payment to be deemed under duress there must be some actual or threatened power believed to be possessed by the payee over the payor from which the latter has no reasonable means of immediate relief except by paying the tax."

We adopt the *Isberian* court's definition of duress as used in the context of the voluntary payment doctrine and conclude that plaintiff's inability to use a discount coupon does not rise to the level of duress necessary to state a cause of action under *Getto*.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.